IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNA E. SIEBERT, )
)
    Plaintiff, )
) Civil Action No. 09-194 Erie
)
v. )
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I. INTRODUCTION

Plaintiff, Shanna E. Siebert ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Presently pending before the Court are cross motions for summary judgement. For the reasons set forth below, I will deny both motions and the matter will be remanded to the Commissioner for further proceedings.

### II. BACKGROUND

*A. Procedural background*

Plaintiff filed applications for DIB and SSI benefits claiming disability since September 21, 2004 due to lower back pain, right foot and heel pain, obesity, anxiety and depression (Administrative Record, hereinafter "AR", 72; 85-86; 329-330). Her applications were denied on February 28, 2005 and the Appeals Council remanded for further proceedings on December 14, 2006 (AR 40; 44). On November 7, 2007, a hearing was held before an administrative law judge ("ALJ") (AR 332-369). An impartial vocational expert testified that an individual with the Plaintiff's vocational profile could perform the Plaintiff's past relevant work as a companion and an assembler (AR 362).

Thereafter on April 14, 2008, the ALJ concluded, in a written decision, that the Plaintiff

1

was not entitled to a period of disability, DIB or SSI under the Act (AR 14-28). Her request for review by the Appeals Council was denied (AR 5-7), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed her Complaint in this Court on August 5, 2009. Thereafter, cross motions for summary judgment were filed, and this matter is now ripe for disposition.

*B. Plaintiff's vocational and medical background*

Plaintiff was 26 years old on her alleged onset date and was 30 years old on the date of the ALJ's decision (AR 18). She has a high school education and additional training as a nurses assistant (AR 18; 77-78). Her prior work experience includes work as a personal care aide (home health aid), certified nurse assistant, companion and small products assembler (AR 18; 73).

The administrative record indicates that the Plaintiff has been treated for her back pain and heel pain by James Barke, M.D. since 2002.[1] In May 2002 the Plaintiff was assessed with a right heel spur and received a cortisone injection (AR 259). In June 2002 she reported recurrent pain in her right heel but denied suffering from any back pain (AR 258). On November 18, 2002, the Plaintiff reported low back pain aggravated by standing for 10 hours a day at her job (AR 257). She was prescribed Ibuprofen and Flexeril and diagnostic studies were ordered (AR 257). Dr. Barke referred the Plaintiff for physical therapy on November 2002 but she was discharged for non-compliance after attending only one session (AR 200).

Plaintiff continued to be seen by Dr. Barke's office for follow-up in 2003. Dr. Barke referred the Plaintiff for physical therapy a second time in February 2003 but she was again discharged for non-compliance (AR 193). On April 11, 2003 an MRI of the Plaintiff's lumbar spine showed degenerative disc disease and a "mild disc bulge" at the L5-S1 level and borderline spinal stenosis (AR 253). In June 2003 the Plaintiff had breast reduction surgery which relieved her upper back pain (AR 128-137; 235; 243).

On March 17, 2004, the Plaintiff complained of chronic back pain and recent insomnia (AR 236). On physical examination, Dr. Barke found some mild discomfort in the lumbar spine and upper sacral area (AR 236). Plaintiff was able to easily forward flex to 90 degrees and come

---

[1] Dr. Barke also treated the Plaintiff for her complaints of anxiety and depression, and referred her for evaluation at the Dickinson Mental Health Center in February 2005 (AR 275). Plaintiff does not, however, challenge the ALJ's findings with respect to her alleged mental impairments.

2

to an erect position (AR 236). Lateral and hyperextension movements caused the Plaintiff discomfort in the lower back area (AR 235). Dr. Barke was of the opinion that the Plaintiff's chronic lower back pain was caused by her morbid obesity (AR 235). He assessed her with chronic back pain secondary to morbid obesity and periodic insomnia (AR 235). He prescribed Xenical, a weight loss drug, recommended that she start an 1800 calorie diet, and gave her a list of lower back exercises (AR 235). She was also given a prescription for Relafen, an anti-inflammatory drug (AR 235).

Plaintiff returned for follow-up on April 30, 2004 and reported that although the back exercises had helped alleviate her pain, she experienced increased discomfort, as well as increased right heel pain, since beginning a new job (AR 235). Physical examination of her foot revealed point tenderness of the medial aspect of the calcaneus (AR 234). Plaintiff was counseled regarding her diet, and it was stressed that "it would help greatly if she had weight loss since the obesity [was] causing [a] tremendous amount of stress in the low back area" (AR 234). She was assessed with morbid obesity, chronic back pain and plantar fasciitis (AR 234). Celebrex was prescribed, she was referred for a physical therapy evaluation, told to use an arch support and heel pads for her foot, and perform foot exercises (AR 234).

When seen by Dr. Barke's office on May 28, 2004, the Plaintiff reported that her back pain improved with physical therapy (AR 234). She requested a note from Dr. Barke to decrease her work week to three days a week due to her plantar fasciitis (AR 233). She was to continue physical therapy and stretching exercises, and "significant improvement" was noted on physical examination (AR 233). Although the Plaintiff was to continue with physical therapy, treatment notes reflect that she was discharged from therapy for non-compliance due to her sporadic attendance in May 2004 (AR 176).

In June 2004 Dr. Barke started the Plaintiff on Wellbutrin for her symptoms of depression (AR 233). She complained of chest pain and anxiety (AR 233). By July 2004 her depression and anxiety had improved significantly and she had only mild discomfort in her right foot (AR 229). On September 14, 2004 the Plaintiff reported that she was unable to lose weight on numerous diets and was unable to complete exercise programs due to low back pain (AR 226). Physical examination revealed some limitation on forward flexion and tenderness over the SI joints

3

bilaterally (AR 226). In December 2004 the Plaintiff reported that her back pain was stable and requested medication for symptoms of anxiety (AR 315). Effexor was added to her medication regimen (AR 315).

Plaintiff was examined by Dilbagh Singh, M.D., a consulting examiner, on January 28, 2005 (AR 262-269). Plaintiff relayed a history of back problems, rating her pain as "5" on a scale from 1 to 10 (AR 262). She stated that she attended physical therapy for approximately three to four weeks without any success (AR 262). Plaintiff indicated that it became difficult for her to lift in her nursing assistant position therefore she switched to cleaning houses part time (AR 262). Plaintiff also reported "some heel pain" (AR 262). She claimed that she had tried weight reduction diets without success (AR 263). She further claimed that her previous medications were ineffective in alleviating her symptoms (AR 263). Plaintiff informed Dr. Singh that she had no problem performing activities of daily living (AR 264).

Dr. Singh reported on physical examination that the Plaintiff's gait was steady and she walked without any assistance devices (AR 263). Her motor power was normal, she had normal strength in her upper and lower extremities, her sensory examination and deep tendon reflexes were normal and her balance was good (AR 264). Plaintiff exhibited a "good range of motion" in her lower extremities and her straight-leg raising range of motion was 75 to 80 degrees while lying down and sitting in a chair (AR 264). Dr. Singh reported that her lower back flexion, extension, and side-to-side motion were normal (AR 264). She was neurologically intact and no deficits were noted (AR 264). Dr. Singh formed an impression of "back pain, chronic; low back pain; history of obesity; depression; and history of heel pain" (AR 264). He noted that the Plaintiff had undergone "some physical therapy" in the past and "would benefit from an active rehab program and weight loss program to be gainfully employed" (AR 265). Dr. Singh imposed no restrictions.

Plaintiff returned to Dr. Barke's office on January 31, 2005 for follow up and complained of lower abdominal pain (AR 315). It was noted that she had a history of chronic back pain, plantar faciitis of the right foot, anxiety, depression and morbid obesity (AR 315). Plaintiff reported that she had stopped taking her medications "on her own" (AR 315). Physical examination revealed significant tenderness in her right lower abdomen (AR 314). Her straight

4

leg raising range of motion was 45 to 50 degrees supine but negative in a seated position (AR 314). She was able to forward flex to approximately 40 degrees before experiencing pain in her lower back (AR 314). Her sensation was within normal limits, and her motor strength was 5/5 bilaterally in the upper and lower extremities (AR 314). Her gait was steady but somewhat slow at times and no muscle atrophy was noted (AR 314). She was referred for further work up of her abdominal pain, and was referred for evaluation of her depression and anxiety (AR 314).

Dr. Barke completed a Medical Source Statement with respect to the Plaintiff's ability to perform work related physical activities. He opined that the Plaintiff could lift and carry no more than 10 pounds occasionally, could only stand/walk for 2 to 4 hours per day and could sit for 8 hours per day alternating sitting and standing (AR 270). He further opined that she could occasionally bend, kneel, stoop and crouch, but never balance or climb, and was restricted with respect to heights, moving machinery and vibration (AR 271).

On February 24, 2005, a state agency disability analyst reviewed the medical evidence of record and completed a Residual Functional Capacity Assessment form (AR 278-282). The disability analyst concluded that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could stand, walk and/or sit for six hours in an eight-hour workday; was unlimited in her pushing and pulling abilities; could frequently climb ramps/stairs and ladders/ropes/scaffolds and frequently balance; but could only occasionally stoop, kneel crouch and crawl (AR 279-280). The disability analyst opined that Dr. Barke's physical examination findings, as well as the other objective evidence, did not support the restrictions imposed with respect to lifting, carrying, standing, walking, balancing and climbing (AR 276-277).

Plaintiff completed a Daily Activities Questionnaire dated February 28, 2005 and stated that she lived with her son and mother (AR 99). Plaintiff reported that her daily activities consisted of taking care of her son, cooking and preparing meals, dusting for 15 minutes at a time, cleaning the sink and minimal shopping (AR 99-101). She indicated she could carry one to two bags of groceries at a time and could lift and carry a ten pound bag of potatoes at most (AR 100-101). Her son helped her with the laundry and household chores and she hired someone to perform yard work (AR 100-101). Plaintiff claimed that she needed to rest every half hour for about five to ten minutes between household chores and walking (AR 101). She was only able to

walk on flat, level ground for one-half hour at most without stopping, climb a flight of stairs without stopping to rest once a day, and sit for about fifteen minutes (AR 101). Plaintiff reported that she participated in family get-togethers for holidays and birthdays (AR 103).

Plaintiff further reported that she previously worked as a certified nurse assistant and housekeeper, but was unable to keep up with her work due to pain (AR 104). She claimed that most of the time her pain level was an "8" on a scale from 1 to 10, but at times was a "9" or "10" (AR 105). Plaintiff reported constant pain located in her back and left hip, affecting her ability to concentrate (AR 107). She tried physical therapy, hot showers, heating pads and cold packs in her attempts to alleviate her pain (AR 108).

Plaintiff returned to Dr. Barke on March 17, 2005 for follow up and reported no change in her pain (AR 312). Treatment notes reflect that the Plaintiff had been referred to physical therapy for aggressive treatment with no significant improvement (AR 312). It was also noted that a recent colonoscopy revealed nothing of any significance (AR 312). Her Ultracet dosage was increased and Flexeril was added to her medication regimen (AR 312). Plaintiff was diagnosed with chronic abdominal pain of unknown etiology and chronic back pain (AR 312).

On May 18, 2005 the Plaintiff requested a prescription for Meridia and expressed concern about her ankle swelling at the end of the day (AR 308). She also inquired about "further treatment" for her lower back pain, stating that Ultracet "[took] the edge off" but did not completely alleviate her pain (AR 308). Physical examination revealed some limitation in forward flexion (AR 308). She was prescribed Meridia and Ultracet (AR 308). June 2005 treatment notes reflect that the Plaintiff was approximately eight weeks pregnant (AR 308).

On September 10, 2005, the Plaintiff complained of increased back pain exacerbated by lifting, standing and sitting in a car (AR 307). Physical examination revealed some limitation in forward flexion and her straight leg raise test was negative (AR 307). Plaintiff was sixteen weeks pregnant, and she was to advise her obstetrician of her elevated back pain (AR 307).

Plaintiff returned to Dr. Barke's office on December 7, 2005 complaining of chronic back pain (AR 307). Physical examination revealed some tenderness in the L/S region, but her reflexes were normal and no sensory or motor deficits were found (AR 306). She was 30 weeks pregnant and was instructed to take Tylenol for the pain (AR 306).

6

Following the birth of her child, the Plaintiff returned to Dr. Barke on April 17, 2006 for management of her lower back pain (AR 306). She reported pain in the mid to upper lumbar region with no radiation, numbness or weakness noted (AR 306). Plaintiff indicated that over the counter medications were ineffective (AR 306). Physical examination showed some mild tenderness of the lumbar paraspinal muscles bilaterally, but there was no tenderness in the SI joints bilaterally (AR 306). There was decreased range of motion with flexion and extension (AR 306). She was assessed with chronic low back pain and referred for pain management therapy (AR 305). Plaintiff was also given a prescription for Ultraset to be utilized only if her back pain was "intense" (AR 305). An MRI of the Plaintiff's lumbar spine dated April 19, 2006 showed progressive anterolisthesis of the L5-SI (AR 310).

Following an apparent pain management consult in May 2006, the Plaintiff reported to Dr. Barke that she needed surgical intervention for her back problems (AR 305). On December 28, 2006 she complained of back pain and requested medication while she considered the possibility of surgery (AR 303). Physical examination revealed marked limitation in forward flexion of her back (AR 303). Dr. Barke assessed her with obesity and prescribed Darvocet (AR 303).

Plaintiff returned to Dr. Barke for follow up in January 2007 (AR 303). She was limited in forward flexion and Dr. Barke prescribed Relafin and Fastin for weight loss (AR 303). Dr. Barke also reported that the Plaintiff was limited in forward flexion at her physical examination on February 26, 2007 (AR 302).

On April 3, 2007, the Plaintiff reported some relief in her back pain with the Darvocet (AR 302). She reported a "mild" amount of drowsiness but was still able to "function well" (AR 302). Plaintiff stated that she had occasional radiation of pain into her right leg (AR 302). On physical examination, the Plaintiff had limitation on forward flexion, there was mild tenderness over the mid L-spine and the SI joints were non-tender bilaterally (AR 301). Dr. Barke prescribed Darvocet and recommended the Plaintiff avoid activities that aggravated her back (AR 301).

On November 6, 2007, Dr. Barke completed a second Medical Source Statement with respect to the Plaintiff's ability to perform work related physical activities. He opined that the

7

Plaintiff could lift and carry less than 10 pounds; could only stand/walk for 1 hour in an 8-hour day; could sit for 2 hours in an 8-hour day alternating sitting and standing every 15 minutes which would require her to be off task; and was limited in frequent motion of her lower extremities (AR 297-298). He further opined that she could occasionally kneel, crouch, crawl and stoop, but never balance or climb, and was restricted with respect to heights and machinery (AR 299). Dr. Barke stated that the Plaintiff would likely call off work three days out of a five day work week, and would likely be unable to complete an eight-hour work day three days per week (AR 300). In addition, the Plaintiff would be "medically required" to take four to eight unscheduled breaks from work in excess of five to ten minutes (AR 300).

Plaintiff and Jay Steinbrenner, a vocational expert, testified at the hearing held by the ALJ. Plaintiff testified that she had a twelve year old son, a one and one half year old daughter and was four months pregnant with her third child (AR 338-339). She was 5'3" tall and weighed 299 pounds at the time of the administrative hearing (AR 338). Plaintiff testified to performing a variety of jobs for short periods of time, but claimed she was unable to remain employed due to an inability to either sit or stand for long periods of time (AR 341-346). She last worked in 2005 as a personal care aide/companion and "watched a lady in her home" but could not "sit with her any longer" due to back pain (AR 341-342). Since she stopped working, the Plaintiff testified that her back pain had "stayed the same" (AR 356). Her pain was at least a "6" upon awakening and as the day progressed it became a "10" (AR 347). Physical therapy did not alleviate her pain and she had not undergone recommended back surgery (AR 353). Plaintiff claimed that she needed to lie down six to eight times per day for one half hour to one hour in order to cope with the pain (AR 355). Plaintiff also stated that she suffered from right foot pain that was a "7" but when she was on her feet it "flare[d] up to be a 10" (AR 354). She did not, however, wear any special shoes or custom orthotics, but took pain medication (AR 351; 354). She had not recently seen a psychologist or psychiatrist (AR 358).

Plaintiff testified that she could walk on a flat, level surface for ten to fifteen minutes, stand for ten to fifteen minutes, sit for ten to fifteen minutes before needing to get up, and could lift a five pound bag of sugar but not a ten pound bag of potatoes (AR 349-350). Plaintiff indicated she could stand and walk for a total of two hours (AR 357-358). She stated that her

mother did the housecleaning and grocery shopping (AR 350). She claimed she was unable to care for her children and that her mother and boyfriend cared for them (AR 356). Plaintiff indicated that her twelve year old son also helped take care of the baby when he came home from school (AR 356).

The ALJ asked the vocational expert to assume an individual of the Plaintiff's age and past work experience, who was a younger individual with a high school education (AR 361). The ALJ further asked the vocational expert to assume the following restrictions: (1) the individual could lift/carry 10 pounds occasionally, less than 5 pounds frequently; (2) the individual could stand and/or walk intermittently for about 15 minutes at a time and up to 4 hours total in an 8-hour workday with normal breaks; (3) the individual could sit for about 6 hours total and perform an 8-hour workday through a combination of alternating sitting and standing; (4) the individual could occasionally stoop, kneel, crouch or balance but never climb or crawl; (5) the individual would have to avoid operating moving machinery, dangerous machinery, working at unprotected heights and vibrations; (6) the individual should avoid repetitive overhead reaching or lifting; and (7) the individual should avoid concentrated exposure to extremes of heat, hot temperatures, cold, and humidity (AR 361). The vocational expert testified that the Plaintiff's past work as a companion allowed her a sit/stand option, and the small parts assembler job could also be performed with a slight alteration to the work station (AR 362). The vocational expert opined that the Plaintiff could perform these past jobs with the limitations imposed by the ALJ (AR 362).

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995). Additionally,

9

if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through March 31, 2008 (AR 18). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers

10

> from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that "[t]he claimant has the following 'severe' ... impairments: morbid obesity; degenerative disc disease at L5-S1 with a mild disc bulge and developmental variation/deformity of the dorsal processes at L5, associated with borderline spinal stenosis; and plantar fasciitis and a possible bone spur on the left heel" but determined at step three that she did not meet a listing (AR 18-19).[2] The ALJ found that she had the following residual functional capacity ("RFC"):

> She is able to: lift, carry, push and pull up to ten pounds occasionally and less than five pounds frequently; stand and/or walk intermittently for about 15 minutes at a time and up to four hours total in [an] eight-hour workday, with normal breaks; sit about six hours total in [an] eight-hour workday, with normal breaks; and she can complete an eight-hour workday through a combination of alternating sitting and standing with normal breaks. She can occasionally stoop, kneel, crouch and balance, but can never climb or crawl. She should avoid operating moving machinery, dangerous machinery, working at unprotected heights, and vibrations, and she should avoid *repetitive* overhead reaching, *repetitive* overhead lifting, and concentrated exposure to extremes of heat/cold temperatures and humidity.

(AR 21) (emphasis in original). Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that the Plaintiff would be able to perform her past relevant work as a companion and assembler as she had performed those occupations (AR 26-27). The ALJ additionally determined that her statements concerning the intensity, persistence and extent of her symptoms and their limiting effects were not entirely credible (AR

---

[2] The ALJ inadvertently referred to the left heel; in her substantive discussion however, she correctly noted it was the Plaintiff's right heel that was affected (AR 19).

25). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's determination at step four of the sequential evaluation process. At step four, the ALJ is required to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. §§ 404.1545(a) and 461.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

Plaintiff claims that the ALJ erred in failing to accord Dr. Barke's opinion of November 6, 2007 controlling weight. As discussed above, he opined in his November 6, 2007 report that the Plaintiff could lift and carry less than ten pounds, could stand/walk for one hour per day, and could only sit for two hours per day with alternating sitting and standing every fifteen minutes, requiring her to be off task for ten to fifteen minutes for position change (AR 298). Dr. Barke also stated that the Plaintiff "medically required" four to eight unscheduled breaks per day in excess of five to ten minutes, and would likely call off work three days out of a five day work week (AR 300). The ALJ accorded "less weight" to his November 2007 opinion, reasoning that:

> Dr. Barke is a family practitioner (Exhibit 18F, page 4), not an orthopedic specialist. At the time of the November 6, 2007, assessment, the claimant was pregnant. Pregnancy is not considered to be a medical abnormality and limitations related to that condition did not last for a continuous period of not less than 12 months.[3]

---

[3] The ALJ accorded "significant weight" to Dr. Barke's opinion of January 31, 2005, at which time he concluded that the Plaintiff could lift and carry no more than ten pounds, could stand/walk for two to fours hours per day, and could sit for eight hours per day with alternating sitting and standing (AR 270).

12

(AR 26).

An ALJ may not reject a treating physician's opinion without an adequate explanation and "cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel,* 186 F.3d 422, 429 (3rd Cir. 1981). Here, the ALJ rejected Dr. Barke's later opinion in part, because he was not an "orthopedic specialist" (AR 26). To be sure, an ALJ may consider whether a treating physician is a specialist in evaluating opinion evidence. 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5). However, in this case it is worth noting that Dr. Barke's status as a family practitioner did not preclude the ALJ from according "significant weight" to his opinion of January 2005. "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (quoting *Plummer*, 186 F.3d at 429; citing *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988) and *Kent v. Schweiker*, 710 F.2d 110, 115 (3rd Cir. 1986)). The ALJ's conclusion that the limitations imposed by Dr. Barke in his November 2007 assessment were the result of the Plaintiff's pregnancy is precisely the type of lay speculation that the case law precludes. Indeed, Dr. Barke's Medical Source Statement does not mention the Plaintiff's pregnancy as a "medical/clinical finding" as support for the limitations imposed. Rather, under the question "[w]hat medical/clinical finding(s) support your conclusions ...?", Dr. Barke stated: "chronic low back pain per patient history"; "unable to ambulate for more than 5-10 minutes without pain"; and "MRI evidence of mild disc bulging and borderline spinal stenosis of [the] lumbar spine" (AR 298).

Defendant argues however, that the ALJ's rejection of Dr. Barke's later opinion is entirely supportable by other record evidence, including Dr. Singh's consultative assessment, Dr. Barke's treatment notes, and the Plaintiff's testimony at the administrative hearing. *See* Defendant's Brief, pp. 21-25. However, the ALJ's rejection of the opinions expressed by Dr.

Barke in his November 6, 2007 report must be judged on the basis of the reasons articulated by the ALJ rather than those supplied by defense counsel. *See SEC v. Chenery Corp.,* 318 U.S. 80, 87-88 (1943) ("it is a fundamental rule of administrative law that a reviewing court . . . must judge the propriety of the action solely on the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *see also Fargnoli,* 247 F.3d at 44 n.7 (holding that the district court's decision was contrary to the holding in *Chenery* when it recognized that relevant evidence was not considered by the ALJ and attempted to justify the ALJ's decision by substituting evidence not mentioned by the ALJ, but found in the court's own independent analysis); *O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir. 1991) (relying on *Chenery* and holding that a reviewing court has "no authority to supply a ground for the agency's decision"); *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D.Pa. 2005) ("the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ"); *Dixon v. Astrue,* 2010 WL 891239 at *6 n.4 (W.D.Pa. 2010) (rejecting *post hoc* justifications advanced by the Commissioner for the ALJ's decision as "contrary to established precedent"); *Reynolds v. Apfel*, 1999 WL 509742 at *6-7 (E.D.Pa. 1999) (holding that the court "cannot affirm the denial of benefits by substituting the grounds proposed by the... [Commissioner] for those of the ALJ" where the ALJ "side-stepped" the findings of a treating physician's opinion).

## V. Conclusion

Given the ALJ's failure to have adequately articulated a basis for her rejection of the opinions expressed by Dr. Barke in his November 2007 report, this matter will be remanded to

the Commissioner for further proceedings consistent with this Memorandum Opinion.[4] An appropriate Order follows.

---

[4]The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise relative to the weight which should be afforded Dr. Barke's November 6, 2007 report. *See Thomas v. Comm'r of Soc. Sec.*, __ F.3d __, 2010 WL 4643844 at *2 (3rd Cir. Nov. 18, 2010).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNA E. SIEBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 09-194 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 19th day of November, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED and the Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is hereby directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.